Dear Senator:
Your opinion request regarding Pharmacy Benefits Management companies has been forwarded to me for response.
Your first request asks: "Do Pharmacy Benefit Managers fall under the definition of "third party administrators: (R.S. 22:3031)? If so, should they be licensed by the Department of Insurance as third party administrators?"
In answering your question, we first cite the basis for the Insurance Code in Louisiana "Insurance is a business affected with the public interest and it is the purpose of this Code to regulate that business inall its phases. Pursuant to the authority contained in the Constitution of Louisiana, the office of the commissioner of insurance is created. It shall be the duty of the commissioner of insurance to administer the provisions of this Code." LSA R.S. 22:2 (Emphasis added).
LSA R.S. 22:5(2) of the Insurance Code defines "insurer" as:
 "includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an inter-insurance exchange or a Lloyds organization is an "insurer". Any person who provides an employee benefit trust as specified in R.S. 22:5(1) is an insurer. A health maintenance organization is an insurer but only for the purposes enumerated in R.S. 22:2002(7).
LSA R.S. 22:3031(5) of the Insurance Code further defines "insurer", for use within the "Third-Party Administration" chapter (LSA R.S. 22:3031 et seq.), as:
 "Insurer" means any person undertaking to provide life or health and accident insurance coverage or worker's compensation insurance in this state. For the purposes of this Chapter, insurer includes a licensed insurance company, a prepaid hospital or medical care plan, a health maintenance organization, a multiple employer welfare arrangement, or any other person or entity providing such coverages for its members or employees a plan of insurance subject to state insurance regulation. "Insurer" shall not include a bona fide employee benefit plan established by an employer or an employee organization, or both, for which the insurance laws of this state are preempted pursuant to the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.).
LSA R.S. 22:3031(1) of the Insurance Code defines "third-party administrator" as:
 "Administrator" or "third-party administrator" or "TPA" means any individual, partnership, corporation, or other person, except an employee of a fund or plan that serves as an administrator, who directly or indirectly solicits or effects coverage of, underwrites, collects charges or premiums from, or adjusts or settles claims on residents of this state, or residents of another state from offices in this state, in connection with life or health insurance coverage or annuities, or who is engaged by any group self-insurance funds or plan of self-insurance providing accident and health protection or worker's compensation coverage to its members or employees to implement the policies of the trustees of the fund and to provide for day-to-day management of the fund, except any of the following:
 (a) An employer on behalf of its employees or the employees of one or more subsidiaries or affiliated corporations of such employer.
(b) A union on behalf of its members.
 (c) An insurer which is authorized to transact insurance in this state, but only with respect to a fully insured policy lawfully issued and delivered in and pursuant to the laws of this state or another state or, an insurer which is authorized to transact insurance in this state and which has capital and surplus of at least fifty million dollars, as evidenced by the insurer's annual statement filed in accordance with R.S. 22:1451, as of December thirty-first of the preceding year.
 (d) An agent or broker licensed to sell life or health insurance in this state, whose activities are limited exclusively to the sale of insurance.
 (e) A creditor on behalf of its debtors with respect to insurance covering a debt between the creditor and its debtors.
 (f) A trust and its trustees, agents, and employees acting pursuant to such trust established in conformity with 29 U.S.C. § 186.
 (g) A trust exempt from taxation under Section 501(a) of the Internal Revenue Code, its trustees and employees acting pursuant to such trust, or a custodian and the custodian's agents or employees acting pursuant to a custodian account which meets the requirements of Section 401(f) of the Internal Revenue Code.
 (h) A credit union or a financial institution which is subject to supervision or examination by federal or state banking authorities, or a mortgage lender, to the extent they collect and remit premiums to licensed insurance agents or authorized insurers in connection with loan payments.
 (i) A credit card issuing company which advances for and collects premiums or charges from its credit card holders who have authorized collection if the company does not adjust or settle claims.
 (j) A person who adjusts or settles claims in the normal course of that person's practice or employment as an attorney at law and who does not collect charges or premiums in connection with life or health insurance coverage or annuities.
 (k) An adjuster licensed by this state whose activities are limited to the adjustment of claims.
 (l) A person who acts solely as an administrator of one or more bona fide employee benefit plans established by an employer or an employee organization, or both, for which the insurance laws of this state are preempted pursuant to the Employee Retirement Income Security Act of 1974. Such person shall comply with the requirements of R.S. 22:3041(G).
 (m) A person licensed as a managing general agent in this state, whose activities are limited exclusively to the scope of activities conveyed under such license.
The Third-Party Administration chapter of the Insurance Code specifically addresses, and regulates, the situation where an insurer contracts with a third-party to perform any of the activities listed in the definition of "third-party administrator" above. These activities are clearly phrased in the alternative; meaning that if a person (defined in LSA R.S. 22:5(6) to include individuals and business entities) performs any of the listed activities, then the person is regulated as a third-party administrator unless the person is exempted by (a) through (m) of the definition. Therefore, while this office cannot undertake a case-by-case examination of a PBM's activities, it is the opinion of this office that, where an insurer contracts with a PBM to perform any one of the activities contained in LSA R.S. 22:3031(1) both parties are subject to the Insurance Code.
The second part of your first question asks, assuming a PBM is a third-party administrator, whether the PBM should be licensed. The Third-Party Administration chapter of the Insurance Code (LSA R.S. 22:3031
et seq.) contains numerous requirements and obligations of third-party administrators. LSA R.S. 22:3041 requires a license and provides: "No person shall act as, or offer to act as, or hold himself out to be an administrator in this state without a valid license as an administrator issued by the commissioner " Thus, it is the opinion of this office that any person meeting the definition of third-party administrator is required to obtain a license from the Commissioner of Insurance.
Your second request is: "Are PBMs mandated to pay the 10 cent provider fee established in (R.S. 46:2625) and Directive 157? If so, is it appropriate for the PBMs to designate this fee as a sales tax, or should they be required to designate the fee as the provider fee in a separate field on the Explanation of Benefits?"
LSA R.S. 46:2625 requires, inter alia, all pharmacies to pay ten cents per out-patient prescription. This ten cents per prescription is remitted to the Department of Health and Hospitals and, ultimately, is deposited into the Louisiana Medical Assistance Trust Fund. LSA R.S. 46:2625(2) states: "Any fee authorized by and imposed pursuant to this Section shall be considered an allowable cost for purposes of insurance or other third party reimbursements and shall be included in the establishment of reimbursement rates." Thus, assuming a PBM is found to be a third-party administrator, it is the opinion of this office that the PBM is mandated to reimburse the pharmacy for the ten cent provider fee established in R.S. 46:2625.
The second part of your second question asks whether it is appropriate for the PBMs to designate this fee as a sales tax, or should they be required to designate the fee as the provider fee in a separate field on the Explanation of Benefits?
The Insurance Code does not appear to contain a statutory basis for the Department of Insurance to require a PBM, who qualifies as a third-party administrator, to alter the Explanation of Benefits to designate the LSA R.S. 46:2625 mandated fee in a separate field.
The Third-Party Administrator Chapter of the Insurance Code (LSA R.S.22:3031) does not mention the Explanation of Benefits, or its composition. The Insurance Code does not contain a specific statute that grants the Department of Insurance general authority to regulate the Explanation of Benefits. There are instances in the Insurance Code that do require that certain items be individually listed on an invoice. For example, LSA R.S. 22:627(B) and (C) require that any "premium tax" and/or "policy fee" "shall be separately stated." However, there does not appear to be any specific statute for this particular situation.
Therefore, it is the opinion of this office that, while the Department of Insurance does have the authority to force a PBM, who qualifies as a third-party administrator, to reimburse the R.S. 46:2625 provider fee, the Department of Insurance does not have the necessary statutory authority to require the PBM to alter its Explanation of Benefits.
I trust this answers your inquiry. Should you have any further questions, please feel free to contact this office for further assistance.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ____________________ THOMAS L. ENRIGHT, JR. Assistant Attorney General
RPI/TLE;dsc
DATE REQUESTED: April, 22 2002
DATE RELEASED: June 12, 2002